**MARK B. FROST & ASSOCIATES**
**BY: MARK B. FROST**
**BY: RYAN M. LOCKMAN**
**7 North Columbus Boulevard, 2ⁿᵈ Floor**
**Philadelphia, PA 19106**
**P: 215-351-3333**
**F: 215-351-3332**
**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**

| | | |
|---|---|---|
| **SHARON OTERO, et al.** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **NO.** |
| **v.** | : | |
| | : | |
| **PORT AUTHORITY OF NEW YORK AND** | : | |
| **NEW JERSEY,** | : | |
| **MICHAEL FEDORKO, and** | : | |
| **MICHAEL FORD,** | : | |
| | : | **COMPLAINT** |
| **Defendants.** | : | |
| | : | **JURY TRIAL DEMANDED** |

**NATURE OF ACTION**

1. This action arises from the deprivation of rights secured to the Plaintiffs pursuant to the United States Constitution, Article 1 §10 and the Fourteenth Amendment, §1983 of Title 42 of the United States Code, and pursuant to the Constitution of New Jersey, N.J. Const. Art. 7, §1, which guarantees that government employees will be promoted according to merit and fitness.

2. The Plaintiffs are police officers for the Port Authority of New York and New Jersey. All but one of the Plaintiffs in the instant action are all also plaintiffs in Otero v. Port Authority, et al., 14-1655 ("Otero I"), which pertains to the promotional exam for the rank of Sergeant that began in 2010.

3. In the instant action, Plaintiffs are seeking an injunction to halt the *2015* promotional examination

1

for the rank of Sergeant, based on irreparable harm that they would face should the 2015 promotional exam proceed as scheduled.

4. The individual Plaintiffs have a property right to their continued employment and its perquisites, including, but not limited to, a fair and impartial promotional process, the right to appeal and have a hearing, the right to be fairly considered for promotion based on merit and fitness and to not be denied promotion based on decisions made arbitrarily and capriciously.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

6. Jurisdiction lies over the state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

7. The amount in controversy, exclusive of interest and costs, exceeds the sum of one hundred thousand dollars ($100,000.00).

8. As set forth herein, the unlawful employment practices complained of herein occurred, and Defendant regularly does business within the District of New Jersey, and Defendants reside within the District of New Jersey. Therefore venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1392 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

9. Plaintiff Sharon Otero is a citizen of the State of New York, residing therein at 63-04 62nd Avenue, Middle Village, NY, 11379. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

10. Plaintiff Steve L. Pisciotta is a citizen of the State of New Jersey, residing therein at 223

Fairview Avenue, Rutherford, NJ, 07070. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

11. Plaintiff Veronica Escobar is a citizen of the State of New Jersey, residing therein at 188 Everett Place, Englewood, NJ 07631. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

12. At all times material, Plaintiff David Cortes has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 77 Colonial Ave, Hamilton. NJ 08610.

13. At all times material, Plaintiff Michael Ortiz has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 7 Pomander Drive, White Plains, NY 10607.

14. At all times material, Plaintiff Ralph Sallemi has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 9 Michael Ln, Monroe Township, NJ 08831.

15. At all times material, Plaintiff Bryan Seeley has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 126 Linnea Ln. Brick, NJ 08724.

16. At all times material, Plaintiff John Berardi has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 30 Lindale Ct., Clifton, NJ 07013.

17. At all times material, Plaintiff Chris DePrisco has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 41 Firth Rd., Staten Island, NY 10314.

18. At all times material, Plaintiff Michael Mollahan has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 30 Torview Avenue, New City, NY 10956.

19. At all times material, Plaintiff Jason Malice has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 25 Windmill Ln, New City, NY 10956.

20. At all times material, Plaintiff Luis Herrera has been employed as a police officer in the Port

Authority Police Department. Plaintiff resides at 5 Anna Court, Stony Point, NY 10980.

21. At all times material, Plaintiff Angel Correa has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 3 Colonial Heights Dr., Ramsey, NJ 07446.

22. At all times material, Plaintiff Joseph Arias has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 1716 Holland Avenue, Apt. 4, Bronx, NY 10462.

23. At all times material, Plaintiff Anthony Baicich has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 27-14 27th St, Astoria, NY 11102.

24. At all times material, Plaintiff Frank Misa has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 245 N. Kings Ave., North Massapequa, NY 11758.

25. At all times material, Plaintiff John McCabe has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 94 Rhode Island Ave., Massapequa, NY 11758.

26. At all times material, Plaintiff Joseph Abarno has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 37 Mohannis Way, Kings Park, NY 11754.

27. At all times material, Plaintiff John Madigan has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 3 Rose Street Extension, Florida, NY 10921.

28. At all times material, Plaintiff David Guriel has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 13540 77th Ave., Apt E, Flushing, NY 11367.

29. At all times material, Plaintiff Anthony Heinlein has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 145 Deforest Rd, Dix Hills, NY 11746.

30. At all times material, Plaintiff Thomas Pepe has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 67 Moody Ave, Islip, NY 11751-2409.

31. At all times material, Plaintiff Lawrence Gregg, Jr. has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 46 Brooklyn Ave., West Babylon, NY 11704.

32. At all times material, Plaintiff Matthew Newkirk has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 318 Warwick Drive, Cream Ridge, NJ 08514.

33. At all times material, Plaintiff Jose Sanchez has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 103 Lakeview Ct., Pompton Lakes, NJ 07442.

34. At all times material, Plaintiff Richard Egan has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 2 Lawn Street, Valley Stream, NY 11580.

35. At all times material, Plaintiff LaVern Watson has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 39 Hibbing Way, Newburgh, NY 12550.

36. At all times material, Plaintiff Daniel McCarthy has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 87 Parker Ave., Manasquan, NJ 08736.

37. At all times material, Plaintiff Craig Farrell has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 79 Bette Rd., East Meadow, NY 11554.

38. At all times material, Plaintiff Thomas Rojecki has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 111 Myrtle Ave., West Islip, NY 11795.

39. At all times material, Plaintiff Dewan Maharaj has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 80-42 255th St., Floral Park, NY 11004.

40. At all times material, Plaintiff Daniel Tarpey has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 4 Bishop Cir., Newtown, CT 06482-1267.

41. At all times material, Plaintiff Robbie L. Vaughn has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 276 New Hampshire Ave., Bay Shore, NY 11706-3207.

42. At all times material, Plaintiff Mike Burke has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 21 Hunter Blvd., W. Milford, NJ 07480.

43. At all times material, Plaintiff Anthony Stable has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 222 Stonehurst Blvd., Freehold, NJ 07728.

44. At all times material, Plaintiff Giovanni Perrotta has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 36 Winslow Terrace, Fair Lawn, NJ 07410.

45. At all times material, Plaintiff Peter Friedrich has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 8 David Court, Plainview, NY 11803.

46. At all times material, Plaintiff Kameel Juman has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 103-20, 109th St., Richmond Hill, NY 11419.

47. At all times material, Plaintiff Peter Sippel has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 7 Holly Tree Ln., Glen Cove, NY 11542.

48. At all times material, Plaintiff Terence Moti has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 36 Kent Street, New Hyde Park, NY 11040.

49. At all times material, Plaintiff Thomas Mancini has been employed as a police officer in the

Port Authority Police Department. Plaintiff resides at 239 Sussex Rd., Wood Ridge, NJ 07075.

50. At all times material, Plaintiff Anthony Picozzi has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 181 Geary Dr., Middletown, NJ 07748.

51. At all times material, Plaintiff Richard Carlson has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 526 Gorham Ave., Woodbridge, NJ 07095.

52. At all times material, Plaintiff Shawn Murphy has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 1067 Torremolinos Court, Toms River, NJ 08753.

53. At all times material, Plaintiff James Deady has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 44 Yorktowne Dr., Manalapan, NJ 07726.

54. At all times material, Plaintiff Peter Costello has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 3889 Jane Ct., Seaford, NY 11783.

55. At all times material, Plaintiff Philip Mongiovi has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 65 Arbor Field Way, Lake Grove, NY 11755.

56. At all times material, Plaintiff Derek Yuengling has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 132 Walnut St, Massapequa Park, NY 11762.

57. At all times material, Plaintiff Brian Ross has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 9 Big Island Road, Warwick, NY, 10990.

58. At all times material, Plaintiff Daniel DeVirgilio has been employed as a police officer in the

Port Authority Police Department. Plaintiff resides at 74 Briscoe Terrace, Hazlet, NJ 07730.

59. At all times material, Plaintiff Rajiv Sama has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 49 Demarest Avenue, West Nyack, NY 10994.

60. At all times material, Plaintiff Duane Hatchette has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 18 Jones St., Jersey City, NJ 07306.

61. At all times material, Plaintiff William Kruesi has been employed as a police officer in the Port Authority Police Department. Plaintiff resides at 19 Friar Lane, Freehold, NJ 07728.

62. Plaintiff James Camus is a citizen of the State of New York, residing therein at 4 Dennis Mchugh Ct, Tappan, NY 10983. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

63. Plaintiff Joseph Rotondo is a citizen of the State of New Jersey, residing therein at 14 Rosemary Drive, Hazlet, NJ 07730. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

64. Plaintiff Joseph O'Leary is a citizen of the State of New York, residing therein at 298 Malvine Ave., Staten Island, NY 10309. At all times material, Plaintiff has been employed as a police officer in the Port Authority Police Department.

65. Defendant, Port Authority of New York and New Jersey (cited variously herein as "Defendant" or the "Port Authority") is a bi-state transportation agency created with the consent of the United States Congress pursuant to Article 1, §10 of the United States Constitution.  At all relevant times, the Port Authority was and is a state actor, has employed over 1,000 police officers, and has been continuously, and is now, doing business in the States of New York and New Jersey.

66. The Port Authority's main office is located at 225 Park Avenue South, New York, NY 10003. The Port Authority maintains offices in and regularly transacts business in New York and New Jersey.

67. The Port Authority is a municipal corporate instrumentality under the laws of New York and New Jersey.  The Port Authority's power derives from the consent of Congress and from the States of New York and New Jersey, the latter two of which appoint the twelve commissioners that govern the Port Authority - six are selected by each of the participating states. The Commissioners' actions are, in turn, subject to veto by the governor of either state. Further, in the event the Port Authority's revenues are inadequate to meet its expenses, each state is obligated only to pay for the Port Authority's salaries, office and administrative expenses.

68. Defendant Port Authority controls the Port Authority Police Department.

69. The Port Authority Police Department headquarters is located at 241 Erie Street, Jersey City, NJ 07310.

70. Defendant Michael Fedorko has at all times material served as Superintendent of the Port Authority Police Department, located at 241 Erie Street, Jersey City, NJ 07310. In such a capacity, Fedorko is a policymaker for the Port Authority and/or Port Authority Police Department.

71. Defendant Michael Ford has at all times material served as the supervisor for the Assessment Services Unit in the Human Resources department of the Port Authority, located at 225 Park Avenue South, New York, NY 10003. In such a capacity, Ford is a policymaker for the Port Authority.

72. Defendants John Does #1-10 are employees and/or officials of the Port Authority and/or PAPD who were and/or are involved in the implementation of the promotional examination

for the rank of Sergeant and/or who manipulated portions of said examination for improper purposes. The identities of these individuals are not currently known to Plaintiffs.

## FACTUAL ALLEGATIONS

### A. PORT AUTHORITY POLICE FORCE

73. The Port Authority maintains a Police Force to protect all facilities owned by the Port Authority, to maintain order, and to enforce state and city laws at these facilities.

74. Port Authority police officers are designated by statute as police officers of both New York and New Jersey.

75. Port Authority police officers have law enforcement jurisdiction in New York and New Jersey and are permitted to serve warrants, make arrests, use physical and deadly force, carry and use firearms, carry and use handcuffs, issue summonses, engage in criminal investigations, employ counterterrorism strategies, and participate in aircraft rescue, firefighting, and emergency services.

76. Port Authority police officers begin their careers as uniformed officers.

77. Both uniformed police officers and detectives are supervised directly by police officers who have obtained the rank of "Sergeant" or "Detective Sergeant".

78. The rank of Sergeant is the first official supervisory level in the leadership hierarchy of the Port Authority police department.  There are other supervisory ranks above the rank of Sergeant and the pay scale for each progressively higher rank in the hierarchy is higher than the rank below Sergeants are paid a base salary that is higher than that paid to uniformed officers.

79. A police officer cannot be promoted to higher ranks without first being promoted to Sergeant.

80. The Port Authority Police Department (PAPD) is responsible for law enforcement over

approximately thirteen (13) transportation-related facilities under control of the Port Authority of New York and New Jersey.

81. At all times material, the PAPD consisted of approximately 1,400-1,700 officers at any given time.

**B. THE 2010 PORT AUTHORITY SERGEANT PROMOTIONAL EXAMINATION**

82. The Otero I lawsuit pertained to the March 3, 2010 announcement for an examination to the rank of Sergeant, the subsequent examination process and promotions made as a result of said process.

83. On March 3, 2010, a promotional examination was announced. This announcement set out certain criteria for promotion for the rank of Sergeant.

84. The candidates for promotion had waited approximately nine (9) years since the last promotional exam, which took place in 2001.  Thus, the 2010 examination was the first chance for most of the Plaintiffs to apply for promotion.

85. As alleged in the Otero I suit, the 2010 examination has been tainted with cronyism, nepotism, and other improper practices. This included the disclosure of exam questions and answers to candidates assigned to the Academy, the Port Authority promoting individuals who did not meet the criteria for promotion, the violation of the promotional policy set forth in the Collective Bargaining Agreement, the conducting of evaluations ("qualification review meetings") in an arbitrary manner without scoring guidelines or benchmarks, and the implementation of additional, unwritten requirements in order to eliminate candidates who were not favored by the Port Authority.

86. As set forth below, since the filing of Otero I, the Port Authority has continued its pattern of manipulation of the exam process and violation of Plaintiff's rights, as set forth herein.

### C.  PROMOTIONS TO SERGEANT SINCE THE FILING OF OTERO I

87. Since the filing of <u>Otero</u> I on March 14, 2014, the Port Authority has made repeated promotions of officers to the rank of Sergeant.

88. On March 27, 2014, days after the filing of <u>Otero</u> I, Fedorko ordered the arbitrary promotion of eight (8) additional officers to the rank of Sergeant, but none of the plaintiffs were promoted.

*89.* In further manipulation of the promotional examination process since the inception of Otero I, the Port Authority subsequently sent officers to "Sergeant's Supervisory Development Training", in order to promote the Port Authority's favored candidates.

*90.* On April 15, 2014, twenty-five (25) officers were arbitrarily chosen to be sent to Supervisory Development Training. No explanation was provided as to why said officers as opposed to others were chosen.

*91.* Subsequently, nineteen (19) of the twenty-five (25) officers who attended the supervisory development training have been promoted, as follows:

92.  On August 5, 2014, the Port Authority arbitrarily promoted three (3) officers who attended said training, Officers Spollen, Burke and Gil, to the rank of Sergeant, but none of the Plaintiffs were promoted.

93. On September 22, 2014, Fedorko arbitrarily promoted one (1) officer who attended said training, Michael Brennan, to Sergeant.

94. On December 3, 2014, Fedorko arbitrarily promoted three (3) officers who attended said training, Christopher Duffy, Jeffrey Galub, and Lance Smith, to Sergeant.

95. On January 30, 2015, Fedorko again arbitrarily promoted one (1) officer who attended said training, Andrew Vannata, to Sergeant.

96. On February 20, 2015, the Port Authority arbitrarily promoted ten (10) officers who had attended said training to Sergeant, effective March 1, 2015.

97. Moreover, on March 11, 2015, Fedorko again arbitrarily promoted just one more officer who had attended said training, Craig Hoo, effective March 22, 2015.

98. In fact, every *single* officer promoted since April 15, 2014 had been chosen by the Port Authority to attend said training.

99. Access to this training was selectively provided, under the guise of bolstering the credentials of those whom the Port Authority wanted to promote, and attendance at this training became mandatory in order to be promoted.

100. However, the Port Authority has denied Plaintiffs the ability to attend said training and has not explained how or why officers are selected to attend said training.

101. Thus, by being denied access to said training, in addition to the other improprieties stated, the Plaintiffs have been denied the ability to be promoted.

102. In sum, since the filing of the instant action, Fedorko has promoted a total of twenty-seven (27) officers over seven different (7) occasions, but none of the plaintiffs have been promoted, even though all of them remain on the horizontal roster of officers eligible to be promoted.

### D.  SUBSEQUENT PROMOTIONS TO LIEUTENANT

103. Additionally, officers who were promoted to Sergeant as part of the March 3, 2010 promotional announcement are now being promoted to Lieutenant.

104. Of the sixteen (16) Sergeants who have been promoted to Lieutenant, thirteen (13) of them had been promoted to Sergeant as part of the March 3, 2010 promotional announcement for the rank of Sergeant.

105.    Because none of the plaintiffs have been promoted to Sergeant, they have been ineligible to be promoted to Lieutenant and are ineligible to be promoted to Lieutenant until they are promoted to Sergeant and obtain the requisite amount of in-grade experience as a Lieutenant.

106.    Because Plaintiffs were not promoted to Sergeant, they have been ineligible to be promoted to Lieutenant and are ineligible to be promoted to Lieutenant in the future under the August 29, 2014 promotional announcement.

107.    Due to Plaintiffs not being promoted as part of the July 8, 2011 promotional order or subsequent promotional orders, Plaintiffs were therefore denied subsequent promotion to the rank of Lieutenant.

**E. 2015 ANNOUNCEMENT OF NEW PROMOTIONAL EXAM FOR RANK OF SERGEANT.**

108.    On March 4, 2015, a new promotion evaluation announcement was issued, to be held on April 18, 2015.

109.    Whereas the last two promotional examinations were nine (9) years apart (2001 to 2010), this promotional exam is being held only five years after the March 2010 announcement.

110.    This announcement established a completely new test, to establish a new "horizontal roster of those eligible to be considered for promotion to the rank of Sergeant."

111.    This was done even though over three-hundred (300) officers eligible for promotion – including all plaintiffs - remain on the existing horizontal roster.

112.    As a result, the new horizontal roster will supersede the old horizontal roster, which served as the eligibility list for the 2010 exam. All of the Plaintiffs were placed on the 2010 horizontal roster and thus were eligible for promotion to Sergeant. However, as a result of the new exam, the existing eligibility list will be dissolved.

113.    Further, this was done even though the Port Authority continues to promote from the existing horizontal roster. In fact, as indicated above, ten (10) officers were promoted effective March 1, 2015, and one (1) officer, Craig Hoo, was promoted on March 11, 2015, which was one week *after* the issuance of the March 4, 2015 promotional announcement.

114.    The March 4, 2015 promotional announcement has established completely new criteria and requirements, which will enable the Port Authority to have absolute discretion to promote officers to Sergeant.

115.    A number of the criteria requirements are new to the exam and designed to contain arbitrary and manipulated scoring and results of the promotional exam.

116.    For example, unlike the previous exam, there are *no* other eligibility requirements other than a seniority/experience requirement, which will be explained below; there is no longer a discipline requirement or an attendance requirement, even though Appendix J of the CBA itself indicates that officers with major disciplinary may not be promoted. App. J (III)(B)(1).

117.    In the 2010 exam, several officers did not qualify under the examination criteria but were nonetheless promoted by the Department, as stated in the Otero I Second Amended Complaint; thus, the elimination of these criteria appears to be the Port Authority's attempt to skirt the criteria under the prior exam and CBA, and simply promote whomever they want.

118.    Further, the new promotional announcement indicates that "**at the discretion of the Port Authority**, a random selection process, monitored by the Office of the Inspector General, **may** be conducted…" Page 4.

119.    However, the prior exam mandated this random selection, stating that "a random selection process, monitored by the Officer of the Inspector General, **is** conducted from those who applied

to the bulletin to identify a pool of applications for further consideration." Page 3. The new examination announcement eliminates this requirement.

120.   What was once a mandated random selection process – with oversight by the inspector general – is now completely at the discretion of the Port Authority, and presumably Defendant Fedorko, to promote whomever he wants without regard to the seniority and/or qualifications and/or written exam ratings of the candidates. The written exam is the only objective portion of the examination process.

121.   Again, this demonstrates the Port Authority's attempts to eliminate any obstacle or process that could hinder its desire for unfettered control in promoting its Sergeants and promoting officers with less experience and qualifications.

122.   This new promotional announcement also eliminates other promotional criteria. Whereas the 2010 promotion review board was to consider ten (10) different criteria for promotion, the new announcement only lists four such criteria: the Promotion/Development Appraisal, attendance history, discipline history, and any pending or prior complaints against the officer. Page 4.

123.   Similarly, whereas, in the 2010 announcement, all candidates to be considered by the PRB would also receive a qualifications review meeting (QRM), the new announcement indicates that "only the most competitive candidates will be *invited* to participate in the QRM" (Id.), without defining who or what constitutes the "most competitive" candidates.

124.   Thus, regardless of how well a particular officer performs on the written exam or even in the aforementioned four (4) criteria for promotion, said officer can still be denied an opportunity to be promoted because the Port Authority unilaterally said so, without giving an explanation.

125.    Further, the 2015 examination announcement also contains an inconsistency with regard to the requisite amount of in-grade experience to be promoted. Said announcement established a requirement that each candidate possess 5 years of in-grade experience. However, on page 8 of the very same announcement, the minimum experience necessary is only two years.

126.    Upon information and belief, this was done to promote the PAPD's favored candidates with more than two but less than five years of experience, while holding other officers to a five-year standard.

127.    Additionally, in prior exams, candidates for the promotional exam have been given booklets with reading materials for the exam, which included only department orders, memos, and other official policies and procedures.

128.    Unsurprisingly, unfair advantages are already being provided to favored candidates.

129.    For this new exam, the candidates not only received similar materials, but also received "training materials" from the training academy that were written by members of the academy, some of whom will be taking the 2015 examination and were not eligible to be promoted on the 2010 promotional process..

130.    These training materials, which are to be used as part of the exam, were written by members of the academy, including candidates for the exam.

131.    The following officers assigned to the academy wrote testing materials, and are now eligible to take the same exam for which they helped write the testing materials: Lisa Orlando, Lawanda Irving, Scott Benoit, Milka Moran, and L. Averhoff.

132.    These members of the academy *wrote* testing preparation materials and are being permitted to take the said exam in which they helped write testing preparation materials.

133.    These candidates are studying the very same materials that they themselves wrote and clearly will have an advantage regarding those materials.

134.    Further, none of these individuals were eligible to be promoted in the 2010 exam, was the most recent exam held, because they did not at that time possess sufficient in-grade experience.

135.    Thus, the first time that these four individuals from the academy are eligible for promotion, they are being given a significant advantage in the promotional exam. This is further evidence that the Port Authority intends to manipulate the examination process to provide advantages to its favored candidates, including but not limited to Lisa Orlando, Lawanda Irving, Scott Benoit, Milka Moran, and L. Averhoff.

136.    Further, as indicated in the Otero I complaint, academy members were given an unfair advantage by being provided examination information by John Ferrigno. In or about 2011, John Ferrigno, then a Lieutenant assigned to supervising the Police Academy, took photographs of the list of questions posed to candidates during the Qualification Review Meeting, as well as ideal and/or acceptable answers to said questions. Ferrigno then disclosed these photographs – containing questions and answers for the Qualification Review Meeting – to certain officers who were then assigned to the Academy and who had recently been assigned to the academy. Upon information and belief, Ferrigno disclosed said information to members of the academy on multiple occasions from 2010 until he was forced to retire in May of 2012.

137.    Since the exposure of the cheating scandal in the academy arising from John Ferrigno's misconduct, other steps have been stake to ensure that officers assigned to the academy receive preferential treatment and advantages in the promotional process.

138.    Like in the 2010 examination, candidates who worked in the academy have been provided with testing materials ahead of time.

139.    Additionally, the new announcement adds that there is no time period in which the Port Authority may use the horizontal roster, and may stop promoting from said roster "regardless of whether the roster has been exhausted."

140.    Finally, the only right to appeal pertains to the <u>written</u> portion of the exam; no right to appeal exists for the qualification review meeting or any decisions or scoring by the promotion review board or the promotion of officers by Defendant Fedorko.

141.    As is clear from above, there is no need for a new exam, given that *hundreds* of officers remain on the horizontal roster, including all plaintiffs. Moreover, the PAPD continues to promote officers, even in March of 2015. Thus, clearly, the Port Authority is fully able to make promotions on the existing horizontal roster, instead of instituting a new test.

**F. THE ABOVE CONDUCT CONTINUES A PATTERN OF MANIPULATION FROM THE 2010 PROMOTIONAL PROCESS NEPOTISM, CRONYISM AND OTHER UNFAIR PRACTICES IN THE 2010 PROMOTIONAL PROCESS**

142.    The above manipulation continues a pattern of manipulation that was rampant in the 2010 promotional process and has continued through the date of the filing of the instant action.

143.    All plaintiffs enrolled in the 2010 Sergeant's Promotional Examination.

144.    All Plaintiffs met all of the qualifications and criteria for promotion, pursuant to the March 3, 2010 promotional announcement.

145.    The first section of the examination was a written exam. Only officers who received a score of 70% or higher were deemed eligible for promotion and allowed to proceed in the promotional examination process.

146.    On or about December 1, 2010, all Plaintiffs learned that they received passing scores on the written examination.

147.    465 officers, including all of the plaintiffs, passed the written examination and were placed on the horizontal roster, which is a list of officers eligible to be promoted to Sergeant.

148.    As part of the next phase of the exam, there were apparently two random "lotteries", each of which chose 60 officers in secret from the horizontal roster to proceed to the "selection and assessment" portion of the examination.

149.    The method in which the Port Authority conducted these supposedly random selections has not been disclosed.

150.    Subsequently, the Port Authority changed their procedure and purportedly permitted all individuals on the horizontal roster to proceed to the selection and assessment portion of the examination.

151.    For the selection and assessment process after candidates passed the written test, each candidate would be evaluated by a "Promotion Review Board" in seven (7) categories: 1) Breadth of Experience/ Exposure, 2) Police Sergeant Roster Promotional/Developmental Appraisal, 3) Qualifications Review Meeting, 4) Attendance, 5) Discipline, 6) CCIU Complaints, and 7) Investigation.

152.    The qualification review meeting was an interview by a panel of three individuals. These three individuals were not the same or consistent over all of the interviews. For the most part, each panel consisted of 2 civilian members of the Port Authority Human Resources department and one PAPD superior officer, or vice versa. As will be explained below, the H.R. members were not well-versed in police policies, procedures, or duties, and no benchmarks, guidelines, or uniform scoring systems were used to grade each candidate on each category.

153.    The promotional/developmental appraisal is a recommendation by each candidate's commanding officer. An officer can receive a rating of "Highly recommended", "Recommended" or "Not Recommended".

154.    All plaintiffs received ratings of either Highly Recommended or Recommended for their promotional/developmental appraisals.

155.    Candidates who were evaluated by the Promotion Review Board received an overall score of "Highly Recommended", "Recommended", or "Not Recommended"; ultimately, the decision as to who would be promoted was made by Defendant Fedorko.

156.    Since the March 3, 2010 announcement was issued, the Port Authority has promoted 123 officers on over one dozen occasions, with the latest promotions coming in March of 2015.

157.    However, none of the plaintiffs have been promoted to Sergeant, and they all remain on the horizontal roster.

158.    The process by which officers are recommended by the Promotion Review Board and the panel for the qualifications review meeting was arbitrary and was tainted by nepotism, cronyism and unlawful practices.

159.    The qualification review meetings were conducted by various panels, consisting of three individuals. These three individuals were not the same or consistent over all of the interviews. Rather, the individuals assigned to the panel for each interview completely varied. For the most part, each panel consisted of 2 civilian members of the Port Authority Human Resources department and one PAPD superior officer. The H.R. members were not well-versed in police policies, procedures, or duties.  Further, no benchmarks, guidelines, or uniform scoring systems were used to grade each candidate on each category, nor did each panel apply a uniform scoring system.

160.    The panels did not utilize the same and/or similar criteria, and promoted purely in an arbitrary and/or capricious manner. The ratings given to the candidates was influenced by nepotism, cronyism, and unfair and/or unlawful practices.

161.    The Port Authority promoted Officers to the rank of Sergeant who variously:

    a.  had pending, major disciplinary charges as defined by the Collective Bargaining Agreement;
    b.  had attendance records that, according to the criteria established by the Port Authority, were facially unacceptable;
    c.  had not been recommended by their commanding officers for promotion;
    d.  had civil lawsuits brought against them regarding their conduct as Port Authority Police Officers;
    e.  had investigations against them which resulted in the officer being administratively suspended; and
    f.  had failed their oral examinations.

162.    For example, Jisel Cruz was promoted on July 8, 2011 despite the fact that he had pending major discipline at the time.

163.    Upon information and belief, Scot Pomerantz was also promoted on July 8, 2011, but had not been one of the 60 officers who had been randomly selected to proceed to a qualifications review meeting.

164.    Upon information and belief, Jason Bailey, who was promoted on July 8, 2011, had exceeded the number of acceptable absences under the promotional policy, but was promoted nonetheless.

165.    Upon information and belief, Edwin Manigbas, who was promoted on July 8, 2011, was not recommended by his commanding officer for promotion, but was promoted nonetheless.

166.    In September, 2011, the Port Authority again breached its promotion policy and procedures by promoting two police officers who served as drivers to Michael Fedorko, Officers Coccodrilli and Masouridis, even though they were not on the list of randomly-chosen 60

officers to be evaluated, and they were not subjected to other selection requirements. Subsequently, the PAPD then demoted Coccodrilli and Masouridis from the rank of Sergeant and back to the rank of Officer, at which point Coccodrilli and Masouridis sued the Port Authority. As a result, Coccodrilli and Masouridis were subsequently promoted.

167.    On or about January 23, 2013 the PAPD promoted thirteen (13) officers to the rank of Sergeant. Two of the officers promoted, Amy Desthers and Andrea McCabe, were both related to high ranking officers in PAPD. Additionally, another officer, Robert Zafonte, was only promoted after he contacted high ranking officers in PAPD, in an improper effort to be promoted.

168.    Upon information and belief, Aaron Woody, who was promoted on July 29, 2013, was promoted even though he had pending major discipline at the time.

169.    Upon information and belief, Melvin Cruz exceeded the acceptable number of absences under the promotional policy, but was promoted nonetheless on July 29, 2013.

170.    Upon information and belief, Joseph Opromalla pending major discipline, but was promoted nonetheless on January 15, 2014.

171.    Upon information and belief, Susanne Diaz's absence record exceeded the acceptable level, but she was promoted on January 15, 2014.

172.    Upon information and belief, Arelys Matos had pending disciplinary charges but was promoted on January 23, 2013.

173.    Additionally, in or about 2011, John Ferrigno, then a Lieutenant assigned to supervising the Police Academy, took photographs of the list of questions posed to candidates during the Qualification Review Meeting, as well as ideal and/or acceptable answers to said questions. Ferrigno then disclosed these photographs – containing questions and answers for the

Qualification Review Meeting – to certain officers who were then assigned to the Academy and who had recently been assigned to the academy. Upon information and belief, Ferrigno disclosed said information to members of the academy on multiple occasions from 2010 until he was forced to retire in May of 2012.

174.    Thereafter, certain officers who were promoted received these questions and answers and used said information to gain an unfair advantage over Plaintiffs and the other promotional candidates.

175.    As a result, officers from the academy were highly recommended for promotion and were promoted at an exceedingly disproportionate rate compared to officers who had not been assigned to the Academy.

176.    Further, at least three (3) officers who were promoted who were promoted on July 8, 2011 – Officers Pichardo, DiSimone and Erickson - and received the aforementioned questions and answers, and were also directly involved in the dissemination of Defendant Ferrigno's examination materials.

177.    The Academy is one of the smallest commands of the Port Authority Police Department, and has only approximately two dozen full time non-supervisory police officers permanently and/or temporarily assigned to it at any given time. In comparison, the Port Authority has approximately 1,400-1,700 officers at any given time.

178.    However, of the 123 officers who have been promoted to Sergeant as part of the March 3, 2010 announcement, at least 22 of them (18%) had been assigned to the academy. This is grossly disproportionate, given the fact that the academy is the assignment for approximately two dozen officers out of approximately 1,400-1,700 PAPD officers.

179.    Similarly, of the 24 officers who were on the horizontal roster and assigned to the

academy at the beginning of the 2010 promotional process, **20** of them have been promoted. This is a rate of over **80%**.

### G.  THE UNION AND CBA

180.    The Defendants' actions violated the applicable Collective Bargaining Agreement (CBA).

181.    The CBA states in pertinent part that "[a]ny candidate who would otherwise be eligible to be considered for promotion but who has been given a major disciplinary penalty pursuant to the [CBA] shall not be eligible to be considered for promotion until six months shall have elapsed after the completion of such penalty" and states that the sergeant promotional announcement giving to all officers seeking promotion will contain "[t]he criteria to be utilized for and the weight to be given to the elements of evaluation" App. J (I)(C)(6), (III)(B)(1).

182.    Under the CBA, an officer is not eligible to be promoted under six months after he or she received a major disciplinary penalty.

183.    Further, the above promotional announcements stated that the candidates "[m]ust meet all promotional screening criteria on the Police Sergeant Roster Promotion/Developmental Appraisal form" and "[m]ust meet attendance standards"

184.    Further, the CBA states that promotions may only be given to eligible officers.

185.    However, Defendants violated the policies, procedures, and rights set out in the CBA and promotional announcements.

186.    Although the union filed an unfair practices charge against the Port Authority, they have not sought an adequate remedy of law. The union did not seek any of the remedies sought by Plaintiffs in Otero I, namely the voiding of the 2010 promotional exam, monetary damages, declaratory relief, and promotion.

187.    Further, the prior unfair practice charge has no bearing on the upcoming 2015 examination,

which the union knew about ahead of time, and the union has taken no action to prevent the 2015 exam going forward even though the union was aware of the past improprieties and the abuse of discretion by the Defendants.

### H.  PLAINTIFFS WILL FACE IRREPARABLE HARM

188.    The institution of the 2015 exam has been done to circumvent the lawsuit that the plaintiffs have filed, and continue its manipulation of the promotional process.

189.    If the 2015 promotional examination is to proceed, the aforementioned pattern of manipulation and secrecy will inevitably lead to irreparable harm to all of the plaintiffs should the examination proceed and lead to the promulgation of a new horizontal roster.

190.    Given the manipulation that has already occurred and has already prevented Plaintiffs from receiving a fair or reasonable opportunity to be promoted, irreparable harm will occur.

191.    Prior to the 2010 exam, the department went approximately nine (9) years between exams, from 2001 to 2010.

192.    Should Plaintiffs be forced to wait until the end of this litigation - let alone another five or ten years until a new written examination takes place - they will be deprived of experience, training and promotion, which constitutes irreparable harm.

193.    Similarly, this will likely be the last chance for many of the Plaintiffs to be promoted to Sergeant, since the last exams were in 2000 and 2010, respectively, and thus the next exam would not be expected until at least 2020 or even 2025. At that point, the plaintiffs – who all already have over a dozen years of experience - would be at the point where they would be eligible to retire, which would deny them not only promotion and experience, but also a reduction in pension over the course of their lifetime.

194.    Further, it would deprive them of a chance of being further promoted to Lieutenant, as it not only will delay their experience and training in the rank of Sergeant, but will also deprive them of the years of service necessary to be promoted to Lieutenant.

195.    Accordingly, should this current promotional examination go forward and lead to a new horizontal roster and new promotions from said roster, it will in all likelihood eliminate any chance of becoming Sergeant, will eliminate or reduce any chance of subsequently being further promoted to Lieutenant, and will thus affect the plaintiffs' salaries and retirement pensions.

<u>**COUNT I**</u>
**PLAINTIFFS v. DEFENDANTS**
<u>**VIOLATION OF PLAINTIFFS' DUE PROCESS RIGHTS**</u>

196.    Plaintiffs incorporate by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

197.    Plaintiffs' right to a fair and transparent process of promotions is a right protected by the laws of the United States, including 42 U.S.C. § 1983.

198.    Defendants' deprivation of Plaintiffs' promotions was arbitrary, capricious, unlawful, and motivated by bad faith.

199.    Plaintiffs were not afforded an unbiased, careful and deliberate review process either during or after the promotional exams.

200.    Plaintiffs were denied a meaningful opportunity to appeal results of the promotional exams.

201.    Defendants, through their actions, deprived Plaintiffs of their rights, privileges and immunities provided by federal law, the United States Constitution, and wrongfully denied Plaintiffs promotions, and the opportunity to take fair, unbiased, impartial and/or transparent promotional exams.

202.    Defendants are each liable, because each acted in violation of Plaintiffs' constitutional and civil rights, took no action to remedy the violation of Plaintiffs' constitutional and civil rights, and instead engaged in further wrongful acts after they became aware, or should have become aware, of the unconstitutionality and unlawfulness of their actions.

203.    The promotional process was tainted by nepotism, cronyism and unlawful practices, including but not limited to the improper disclosure of examination information to officers assigned to the academy, which favored said officers and deprived Plaintiffs of a fair, unbiased, and transparent promotional process. Moreover, the defendants promoted officers less qualified than the plaintiffs and/or not qualified for promotion, due to arbitrary and unlawful practices.

204.    Defendant Port Authority's policies and customs caused and/or enabled Defendants to believe that they could violate the constitutional rights of Plaintiffs with impunity and with the explicit or tacit approval of Defendant Port Authority.

205.    The deficient policies and practices enabled Defendants to conspire to manipulate the Sergeants and Lieutenants exams in order to favor certain police officers.  Said acts were in violation of law and constituted official misconduct on the part of said individual defendants.

206.    Defendants violated the provisions of 42 U.S.C. § 1983, in that Defendants, acting under color of state law, deprived Plaintiffs of the privileges and immunities secured to them by the Due Process clause of the Fourteenth Amendment.

207.    Defendants deprived Plaintiffs of their procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

            a.  Enter an injunction prohibiting the 2015 promotional examination from

proceeding as scheduled.

b. Declare the 2015 Sergeants Examination process to be null and void and a new Sergeants Exam to be announced and taken.

c. Declare that all Officers who were promoted to Sergeant pursuant to the tainted 2015 exam be reduced to their former ranks, and/or in the alternative, promoting Plaintiffs to Sergeant, retroactive to the first promotion as part of the 2015 examination process.

d. Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution;

e. Award Plaintiffs compensatory damages including but not limited to:  pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

f. Award reasonable costs and attorney's fees;

g. Award punitive damages; and

h. Grant any other relief this Court deems just and proper under the circumstances.

## COUNT II
## PLAINTIFFS v. DEFENDANTS
## VIOLATION OF 42 U.S.C. 1983

208.    Plaintiffs incorporate by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

209.    Defendant Port Authority developed and maintained a number of deficient policies and/or

customs which cause the deprivation of Plaintiffs constitutional rights.

210.    Defendant Port Authority's policies and customs caused and/or enabled Defendants to believe that they could violate the constitutional rights of Plaintiffs with impunity and with the explicit or tacit approval of Defendant Port Authority.

211.    The deficient policies and practices enabled Defendants to conspire to manipulate the Sergeants and Lieutenants exams in order to favor certain police officers.  Said acts were in violation of law and constituted official misconduct on the part of said individual defendants.

212.    The promotional process was tainted by nepotism, cronyism and unlawful practices, including but not limited to the improper disclosure of examination information to officers assigned to the academy, which favored said officers and deprived Plaintiffs of a fair, unbiased, and transparent promotional process. Moreover, the defendants promoted officers less qualified than the plaintiffs and/or not qualified for promotion, due to arbitrary and unlawful practices.

213.    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and will in the future suffer pain, emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage earning capacity, loss of benefits, and past and future medical expenses.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

      a. Enter an injunction prohibiting the 2015 promotional examination from proceeding as scheduled.

      b. Declare the 2015 Sergeants Examination process to be null and void and a new Sergeants Exam to be announced and taken.

      c. Declare that all Officers who were promoted to Sergeant pursuant to the tainted

2015 exam be reduced to their former ranks, and/or in the alternative, promoting

Plaintiffs to Sergeant, retroactive to the first promotion as part of the 2015

examination process.

d.  Enter a declaratory judgment that Defendants' acts complained of herein have

violated and continue to violate the rights of Plaintiffs as secured by the United

States Constitution;

e.  Award Plaintiffs compensatory damages including but not limited to:  pain,

suffering, past economic loss, future economic loss, back pay, front pay, wage

increases, loss of life's pleasures, loss of reputation, benefits, emotional distress

and other damages;

f.  Award reasonable costs and attorney's fees;

g.  Award punitive damages; and

h.  Grant any other relief the Court deems just and proper under the circumstances.

**COUNT III**
**PLAINTIFFS V. PORT AUTHORITY OF NEW YORK & NEW JERSEY**
**BREACH OF CONTRACT**

214.    Plaintiffs incorporate by reference the preceding allegations of this Complaint as though

each were individually set forth herein at length.

215.    The Collective Bargaining Agreement (CBA) constituted a binding contract between

Defendant Port Authority and the Plaintiffs.

216.    As set forth above, the CBA contained provisions and requirements for promotional

examinations to the rank of Sergeant.

217.    These provisions and requirements were not followed or complied with.

218.    As a result, Defendant Port Authority breached the contract with the plaintiffs.

219.    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and

will in the future suffer pain, emotional distress, mental anguish, humiliation, embarrassment,

inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage

earning capacity, and loss of benefits.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

a.  Enter an injunction prohibiting the 2015 promotional examination from
proceeding as scheduled.

b.  Declare the 2015 Sergeants Examination process to be null and void and a
new Sergeants Exam to be announced and taken.

c.  Declare that all Officers who were promoted to Sergeant pursuant to the
tainted 2015 exam be reduced to their former ranks, and/or in the
alternative, promoting Plaintiffs to Sergeant, retroactive to the first
promotion as part of the 2015 examination process.

d.  Enter a declaratory judgment that Defendants' acts complained of herein
have violated and continue to violate the rights of Plaintiffs as secured by
the United States Constitution;

e.  Award Plaintiffs compensatory damages including but not limited to:  pain,
suffering, past economic loss, future economic loss, back pay, front pay,
wage increases, loss of life's pleasures, loss of reputation, benefits,
emotional distress and other damages;

f.  Award reasonable costs and attorney's fees;

g.  Award punitive damages; and

h.  Grant any other relief this Court deems just and proper under the

circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**MARK B. FROST & ASSOCIATES**

/s/ Ryan M. Lockman
Ryan Lockman
Counsel for Plaintiffs

DATED: April 1, 2015